Below is an Opinion of the Court.

*Randall L. Dunn*
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In Re: | ) | Bankruptcy Case |
| | ) | No. 09-39216-rld7 |
| BRADLEY WESTON TAGGART, | ) | |
| | ) | MEMORANDUM OPINION |
| Debtor. | ) | |

On November 14, 2011, I received evidence and heard testimony and argument at the hearing ("Hearing") on debtor Bradley Weston Taggart's ("Mr. Taggart") Motion to Hold Stuart M. Brown, Terry W. Emmert and Keith Jehnke in Contempt for Violating Discharge Injunction under 11 USC § 524 ("Contempt Motion").[1]  Hereafter, Messrs. Brown, Emmert and Jehnke will be referred to collectively as the "Respondents" and individually as "Mr. Brown," "Mr. Emmert" and "Mr. Jehnke," as appropriate.  The Hearing was limited to issues as to liability.  If I decide the Contempt Motion in favor of Mr. Taggart, a further evidentiary hearing will be scheduled to receive evidence and hear testimony as to

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Page 1 - MEMORANDUM OPINION

1    Mr. Taggart's damages.  At the conclusion of the Hearing, I took the
2    matter under advisement.

3          In deciding this matter, I have considered carefully the
4    testimony presented and the exhibits admitted at the Hearing, as well as
5    arguments presented, both in legal memoranda and orally.  I further have
6    taken judicial notice of the docket and documents filed in Mr. Taggart's
7    main chapter 7 case, Case No. 09-39216-rld7 ("Main Case"), for the
8    purpose of confirming and ascertaining facts not reasonably in dispute.
9    Federal Rule of Evidence 201; <u>In re Butts</u>, 350 B.R. 12, 14 n.1 (Bankr.
10   E.D. Pa. 2006).  In addition, I have reviewed relevant legal authorities,
11   both as cited to me by the parties and as located through my own
12   research.

13         In light of that consideration and review, this Memorandum
14   Opinion sets forth the court's findings of fact and conclusions of law
15   under Civil Rule 52(a), applicable with respect to this contested matter
16   under Rules 7052 and 9014.

17                          <u>Factual Background</u>

18         Unfortunately, the proceedings in this court culminating in the
19   Hearing represent no more than one pitched battle in the longstanding
20   disputes among the parties and their counsel.  It is neither the
21   beginning, nor I fear, the end.  I will refer to the underlying
22   grievances among them only as necessary to set the stage for the filing
23   of the Contempt Motion and its aftermath.

24         Mr. Taggart was a general contractor, who operated through a
25   corporation, Builders, Inc.  Mr. Taggart developed several business
26   parks, anchored by tenants who also were owners.  Sherwood Park Business

Page 2 - MEMORANDUM OPINION

Center, LLC ("SPBC") was formed to build and operate a two-building business park in Sherwood, Oregon. Its Operating Agreement reflects that it was organized on or about October 12, 1999. See Exhibit 1, at p. 18. Initially, SPBC was owned by four members, each with a 25% member interest: Mr. Taggart, Mr. Jehnke, Mr. John Hoffard and Mr. Anthony Benthin. See id. at p. 19. Mr. Taggart was designated as the Manager. See id. at p. 3. Apparently, at some point, Mr. Emmert succeeded to the member interest of Mr. Benthin in SPBC.

In 2004, Mr. Emmert acquired a 50% ownership interest in Builders, Inc. Thereafter, relations between Mr. Taggart and Mr. Emmert became contentious, and Mr. Taggart ultimately encouraged three creditors to file an involuntary bankruptcy petition against Builders, Inc., which had become insolvent while the SPBC buildings were being constructed. "When SPBC paid approximately $33,000 to Builders, Inc. to be used as a deposit for a steel building, Builders, Inc. used the funds for payroll instead." Taggart Trial Brief ("Taggart Trial Brief"), Main Case Docket No. 50, at p. 2. That conduct ultimately resulted in Mr. Taggart being replaced as the SPBC Manager by Mr. Jehnke. Id.

Mr. Taggart's financial condition subsequently deteriorated further. On July 23, 2007, Mr. Taggart formed BT of Sherwood, LLC ("BT") and transferred his 25% member interest in SPBC to BT. Mr. Taggart was represented by attorney John M. Berman ("Mr. Berman") with respect to the formation of BT and the transfer of Mr. Taggart's member interest in SPBC to BT. Mr. Berman informed counsel for SPBC that the transfer had been made. See Exhibit 2. SPBC's counsel responded that Mr. Taggart had no right to make such a transfer. See Exhibit 3. Mr. Taggart later

Page 3 - MEMORANDUM OPINION

transferred his entire member interest in BT to Mr. Berman in exchange for payments totaling $200,000. See Taggart Trial Brief, at pp.3-4; and Exhibit 5.

On or about September 24, 2008, SPBC filed a complaint ("Complaint") against Mr. Taggart, BT and Mr. Berman in the Washington County, Oregon Circuit Court ("Circuit Court"), asserting claims for breach of fiduciary duty, expulsion, breach of contract, attorney's fees and declaratory relief (the "Circuit Court Lawsuit"). See Exhibit A. On or about February 24, 2009, SPBC filed a First Amended Complaint ("Amended Complaint") in the Circuit Court Lawsuit, asserting essentially the same claims with elaborating allegations. See Exhibit B.

On October 28, 2009, Mr. Taggart filed an answer ("Answer") to the Amended Complaint, asserting affirmative defenses of failure to state a claim upon which relief could be granted and claim preclusion and stating a counterclaim for attorney's fees against SPBC, Mr. Jehnke and Mr. Emmert. See Exhibit C.

In the meantime, Mr. Taggart's financial condition was not improving. He wanted to be done with SPBC, he wanted to be free of his connections with Mr. Jehnke and Mr. Emmert, and he had no money to fund participation in the Circuit Court Lawsuit. On November 4, 2009, the day that the trial in the Circuit Court Lawsuit was to begin, Mr. Taggart filed for protection under chapter 7 of the Bankruptcy Code. See Main Case Docket No. 1. In his Schedule B list of personal property assets, Mr. Taggart did not include any interest in either SPBC or BT, but he did include a potential attorney fee award on his counterclaim in the Circuit Court Lawsuit. See Exhibit D, at p. 2; Main Case Docket No. 1, Schedule

Page 4 - MEMORANDUM OPINION

B. The trustee in Mr. Taggart's chapter 7 case filed a report of no assets available for distribution, and Mr. Taggart received his discharge by order entered on February 23, 2010. <u>See</u> Main Case Docket Nos. 14 and 15. Apparently, all action in the Circuit Court Lawsuit was stayed while Mr. Taggart's bankruptcy case was pending.

After Mr. Taggart received his discharge, the Circuit Court Lawsuit was revived. In behalf of Mr. Jehnke and Mr. Emmert, Mr. Brown subpoenaed Mr. Taggart for a deposition on April 9, 2010. <u>See</u> Exhibit 10. Mr. Berman, in behalf of Mr. Taggart, filed a motion for a protective order requesting that the subpoena be quashed, supported by the declaration of Mr. Taggart. <u>See</u> Exhibit E. Mr. Taggart argued that he already had been subjected to an 8-hour videotaped deposition in the Circuit Court Lawsuit, and requiring him to submit to a further deposition in the same case was "harassing, annoying and oppressive." <u>Id.</u> at p. 2. In the motion for protective order, Mr. Berman requested attorney's fees in behalf of BT and Mr. Taggart. <u>Id.</u> at p. 3. The Hearing record is unclear as to the ultimate disposition of the motion for a protective order: Mr. Taggart testified that the Circuit Court never ruled on the motion. Mr. Brown testified that it was his understanding that the Circuit Court denied the motion. In any event, Mr. Taggart appeared at the deposition and was deposed by an attorney for Mr. Emmert other than Mr. Brown.

The rescheduled trial ("Trial") in the Circuit Court Lawsuit was set to begin on May 18, 2010. On May 17, 2010, Mr. Berman filed a Motion to Dismiss and corresponding order to dismiss Mr. Taggart from the Circuit Court Lawsuit in behalf of Mr. Taggart. <u>See</u> Exhibit 12. Neither

Page 5 – MEMORANDUM OPINION

the Motion to Dismiss nor the accompanying order referenced Mr. Taggart's counterclaim for attorney's fees and costs.

The Motion to Dismiss was argued on the first day of the Trial. While counsel for Mr. Jehnke and Mr. Emmert agreed that they would not be seeking monetary relief against Mr. Taggart, Mr. Brown argued that Mr. Taggart was a necessary party with respect to the expulsion claim. The Circuit Court ruled that no money judgment would be entered against Mr. Taggart but otherwise denied the Motion to Dismiss. See Exhibit 13, which includes the portion of the Trial transcript relating to the Motion to Dismiss. No other portion of the Trial transcript was submitted in evidence at the Hearing. Mr. Brown testified that Mr. Berman orally renewed the Motion to Dismiss in behalf of Mr. Taggart at the end of the Trial, and the renewed motion was denied. Mr. Taggart apparently did not appear or testify at the Trial.

Following the Trial, the Circuit Court generally found in favor of SPBC, and Mr. Brown drafted the Findings of Fact and Conclusions of Law ("Findings and Conclusions") that the Circuit Court signed. See Exhibit H. All counterclaims of Mr. Taggart and BT in the Circuit Court Lawsuit were dismissed with prejudice. See id. at p. 9. The Findings and Conclusions were entered on July 29, 2010.

After a delay of a number of months, Mr. Brown prepared and submitted a form of judgment in the Circuit Court Lawsuit to which Mr. Berman objected. The objections to the form of judgment ("Objection to Judgment") were filed by Mr. Berman as "attorney for Defendants BT of Sherwood LLC and John Berman." See Exhibit J, particularly at p. 7. Mr. Taggart testified that Mr. Berman prepared the Objection to Judgment, in

Page 6 - MEMORANDUM OPINION

part, for him.  The Objection to Judgment contains the following, that I quote at length:

> The reason that no General Judgment has been submitted
> is because as a matter of federal law no attorney fees
> or costs, pre- or post-bankruptcy, can be assessed
> against Mr. Taggart.  Thus, the payment to him for the
> 25% interest [in SPBC] must be without any such
> offsets, as explained infra.
>     Mr. Brown, who submitted this form of General
> Judgment, is fully aware that he is asking the Court
> to participate in a violation of federal law.
> Moreover, he has been told that any attempt to seek
> such fees or costs will result in a legal proceeding
> against the responsible parties in the Bankruptcy
> Court for violation of Mr. Taggart's discharge.  It is
> up to this Court to decide how it wishes to respond
> when an attorney asks it to violate federal law
> without even advising this Court that it is being
> asked to do so.
>
>                                             . . .
>                 DETAILS OF OBJECTIONS TO JUDGMENT
>     A.  The proposed judgment states as follows, with
> the objectionable parts italicized, at page 3 lines 3-
> 6[:]
>     "The purchase price shall be the fair market
> value of [SPBC] multiplied by Taggart's 25% membership
> interest, *less any unpaid post-bankruptcy petition*
> *attorney fees, costs and prevailing party fees which*
> *might be assessed against Taggart pursuant to ORCP 68*
> *and ORS Chapter 20 and any necessary proceedings in*
> *bankruptcy court or this court."*
>     As you may recall, Mr. Taggart concluded that he
> had assigned his interest and received fair value.  He
> considered himself to have no interest in this
> proceeding and asked at the commencement of the trial
> to be dismissed.  He did not appear at trial or
> participate in any manner.
>     Under these facts it is a violation of federal
> law for anyone to attempt to obtain any award of
> attorney fees against him.  Mr. Taggart has received a
> discharge in bankruptcy, and that discharge includes
> any liability arising from a continuation of this
> proceeding.
>     SPBC insists that he continues to be the owner of
> the 25% interest, even though Mr. Taggart made no such
> claim and did not engage in the litigation.  SPBC and
> Messrs. Jehnke and Emmert cannot force the
> continuation of this litigation on Taggart, and then
> assert a claim for attorney fees and costs against

Page 7 - MEMORANDUM OPINION

him.

That was the express holding in <u>In re Ybarra</u>, 424 F[.]3d 1018 (2005), a copy of which is attached to this brief.  It held that where a litigant actively asserts claims in litigation post-petition, only then can he be assessed post-petition attorney fees, overruling <u>In re Ybarra</u>, 295 BR 609 (USBAP, 2002), which held that even then attorney fees could not be awarded.

As explained in the Ninth Circuit's decision, and there are numerous other cases that have so held in other jurisdictions, when one is discharged in bankruptcy from liability, including liability associated with prepetition litigation, the fact that the litigation continues without any involvement by the discharged debtor means that no attorney fees or costs on account of those claims can be asserted against the discharged debtor.  His right to a fresh start is preeminent.

The relevant fact is whether the discharged debtor asserted claims in this case post-petition.  He did not.  Here Taggart did not do so, but actively sought to be dismissed from the case.

In addition, the reference to deducting from the payment to be made to Taggart any fees or costs in this or the Bankruptcy Court is improper, not only for the above reasons, but also because it suggests that this court has some authority to assess attorney fees incurred in some unspecified later bankruptcy court proceeding, or some other proceeding in this court, and to deduct them from what Taggart is owed, for which there is absolutely no basis.  Rather, Messrs. Jehnke and Emmert have no legal basis for their claims.  They just don't want to pay for what they say they want to buy.  This is not an option.

The italicized portion of the judgment quote[d] above violates federal law and must be stricken.

<u>Id.</u> at pp. 1-4.

The Objection to Judgment further states:

The payments must be paid to seller.  There is no provision in the Operating Agreement for any escrow account.  Messrs. Jehnke and Emmert want to be the owners of the 25% that Mr. Taggart had owned.  They have to pay for it, and they have to pay Mr. Taggart for it.  Otherwise, Mr. Taggart would be entitled to the rights of an owner, which Messrs. Emmert and Jehnke have said terminated on January 1, 2008.

Page 8 - MEMORANDUM OPINION

_Id._ at p. 6.

On May 2, 2011, the Circuit Court held a hearing ("Judgment Hearing") on the form of judgment to be entered in the Circuit Court Lawsuit.  Mr. Taggart appeared at the Judgment Hearing, purportedly representing himself.  _See_ Exhibit K, at p.1.  Mr. Berman also appeared, representing himself and BT, but he stated to the Circuit Court that Mr. Taggart "consents to what I am proposing."  _Id._  Much of the argument focused on when interest would begin to run on the value of Mr. Taggart's SPBC membership interest to be sold and how proceeds to Mr. Taggart from such sale would be distributed.  _See_ Exhibit K, at pp.2-14.  When Mr. Taggart was called upon to address the Circuit Court, he stated the following:

> MR. TAGGART: Only – the only thing I'd like to say, Your Honor, is that if – if the date is in 2008, then they do – I feel they owe interest on that date.  If it's not, then I –I deserved the – the tax benefit from that period of time.  They can't have their cake and eat it too, in my opinion, so –
> THE COURT: Very well.
> MR. TAGGART: Fair is fair.  Regarding the bankruptcy, my bankruptcy was discharged before you made your decision.  There have been considerable payments made on the taxes already.  We don't know what's the totals of those right now.  My feeling is that any money that comes out of this should go into either an escrow account or Mr. Berman's trust account until we determine exactly what that number is.  They're hopefully not going to be receiving a hundred percent of the proceeds, so –

_Id._ at p. 16.

The General Judgment ("Judgment") in the Circuit Court Lawsuit was entered on May 26, 2011.  _See_ Exhibit L.  The Judgment contained the following specific provisions with respect to Mr. Taggart:

(1) Brad Taggart's attempted transfer of his

Page 9 – MEMORANDUM OPINION

membership interest in [SPBC] to [BT] violated the Operating Agreement and Oregon law.  The transfer is hereby deemed null and void.

(2) Brad Taggart engaged in wrongful conduct as a member of [SPBC].  Brad Taggart is hereby expelled from [SPBC] effective January 1, 2008.

(3) Counterclaim Defendants Emmert and Jehnke have timely elected to purchase Taggart's 25% membership interest.  Pursuant to Section 12.5 of the Operating Agreement, the other remaining members of [SPBC], Keith Jehnke and Terry W. Emmert, are entitled to purchase Brad Taggart's 25% membership interest in [SPBC] as follows:

The purchase price shall be the fair market value of the Company as of the date of entry of Judgment multiplied by Taggart's 25% membership interest, less any unpaid post-bankruptcy petition attorney fees, costs and prevailing party fees which might be assessed against Taggart pursuant to ORCP 68 and ORS Chapter 20 and any necessary proceedings in bankruptcy court or this court.

The fair market value shall be determined by a third-party appraiser acceptable to Jehnke, Emmert and Taggart.  Within 90 days of the valuation, Jehnke and Emmert shall pay twenty percent of the purchase price as a downpayment, and the balance shall be paid in 60 substantially equal, consecutive monthly payments, including principal and interest.  Interest shall accrue from the date of closing at the prime rate quoted by Wells Fargo Bank at Portland, Oregon on the date that this Judgment is entered.  Emmert and Jehnke may prepay some or all of the outstanding balance at any time without penalty or additional interest.

Judgment, Exhibit L, at pp. 1-2.

Both Mr. Taggart and BT appealed the Judgment.  Mr. Taggart testified that he is representing himself in the appeal, but he acknowledged that Mr. Berman assisted him in preparing the Notice of Appeal.  See Exhibit O.

Thereafter, Mr. Brown filed a petition for costs and attorney's fees ("Petition") in behalf of SPBC, Mr. Jehnke and Mr. Emmert in the Circuit Court Lawsuit.  See Exhibit M.  The Petition reflected the understanding that any liability of Mr. Taggart for fees "would be

Page 10 - MEMORANDUM OPINION

limited to fees incurred after he filed for bankruptcy on November 4, 2009 . . . ," citing <u>Boeing North American, Inc. v. Ybarra (In re Ybarra)</u>, 424 F.3d 1018 (9th Cir. 2005). <u>Id.</u> at p. 4. At oral argument on the Petition, Mr. Brown clarified that fees and costs were sought from Mr. Taggart only for the period following the date of his discharge, February 23, 2010. <u>See</u> Exhibit R at p. 3 (p. 11 of the hearing transcript). Mr. Taggart filed objections to the Petition pro se, supported by a Hearing Memorandum prepared by Mr. Berman as Mr. Taggart's attorney. <u>See</u> Exhibit 19. Mr. Brown filed a Reply Memorandum in behalf of SPBC, Mr. Jehnke and Mr. Emmert. <u>See</u> Exhibit P. Mr. Berman called and examined Mr. Taggart as a witness at the hearing on the Petition. <u>See</u> Exhibit R, at pp. 5-6 (pp. 17-21 of the hearing transcript). At the conclusion of the hearing on the Petition, the Circuit Court took the matter under advisement.

On August 11, 2011, the Circuit Court issued a letter opinion ("Letter Opinion") addressing the Petition. <u>See</u> Exhibit Q. The Letter Opinion states the following with respect to Mr. Taggart:

> The court notes that <u>In re Ybarra</u>, 424 F[.]3d 1018 (9th Cir. 2005) holds that the trial court has power to award post-petition attorney fees against a debtor who continues to pursue litigation post-petition that had been begun pre-petition. This is consistent with the federal case law the court reviewed.
> Taggart filed an answer that was file stamped October 28, 2009. The answer contained a counterclaim for attorney fees based on Section 13.6 of the Operating Agreement. The answer also sought to have plaintiff's claim to be dismissed against him. This was consistent with the oral Motion to Dismiss raised at the time of trial. Taggart never abandoned his counterclaim for attorney fees. Rather he continued to pursue his position post-petition that the plaintiff's claim against him be dismissed which, if successful, would have led to Taggart having a

Page 11 - MEMORANDUM OPINION

contractual right to obtain attorney fees.
                    The court awards attorney fees in favor of BT of
                    Sherwood [sic-actually, SPBC] in the amount sought at
                    oral argument.  My notes are difficult to decipher but
                    I believe that amount was $44,691.50.  (It may be
                    accurately $44,611.50 as the ten column is the one I
                    am having trouble reading.)  Costs and disbursements
                    sought as well as the standard prevailing party fee
                    are also appropriate.
                                                      . . .
                    [SPBC] is the prevailing party with respect to Brad
                    Taggart (as noted above) . . . .

Exhibit Q, at pp. 1-2.

        In the meantime, on July 13, 2011, Mr. Taggart had filed the

Contempt Motion, as supplemented by allegations on August 15, 2011.  <u>See</u>

Main Case Docket Nos. 24 and 31-32.  Following the filing of opposition

papers and preliminary proceedings, as noted above, the Contempt Motion

proceeded to the evidentiary Hearing on November 14, 2011.  <u>See</u> Main Case

Docket No. 63.  At the Hearing, Mr. Taggart testified that his deal with

Mr. Berman is if he receives anything for the value of the contested

membership interest in SPBC, the proceeds will be split half to him to

pay tax obligations and half to Mr. Berman.

<u>Jurisdiction</u>

        I have jurisdiction to decide the Contempt Motion under 28

U.S.C. §§ 1334, 157(b)(1) and 157(b)(2)(I) and (O).

<u>Discussion</u>

        The question before me is whether the Respondents violated the

discharge injunction provided for in § 524(a)(2) by continuing to

prosecute the Circuit Court Lawsuit against Mr. Taggart to the point of

requesting an offsetting award of attorney's fees and costs against him

after he received his discharge in his chapter 7 bankruptcy case.


Page 12 - MEMORANDUM OPINION

Section 524(a)(2) provides that, "A discharge in a case under this title – (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ."

Procedurally, an alleged violation of the discharge injunction is pursued, as in this case, by a motion invoking the contempt remedies allowed for in § 105(a). See Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 509-10 (9th Cir. 2002). In order to be subject to sanctions for violating the discharge injunction, a party's violation must be "willful." The Ninth Circuit has adopted a two-part test to determine whether the willfulness standard has been met: 1) Did the alleged offending party know that the discharge injunction applied; and 2) did such party intend the actions that violated the discharge injunction? See Ziloq, Inc. v. Corning (In re Ziloq, Inc.), 450 F.3d 996, 1007 (9th Cir. 2006); Hardy v. United States (In re Hardy), 97 F.3d 1384, 1390 (9th Cir. 1996). The burden of proof for the moving party is clear and convincing evidence. See In re Zilog, Inc., 450 F.3d at 1007; Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002) ("The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.").

Where litigation is commenced prepetition and is recommenced postpetition or postdischarge, the Ninth Circuit has set forth the standards to determine whether the continued prosecution of such litigation violates the discharge injunction of § 524(a)(2) in Boeing

Page 13 - MEMORANDUM OPINION

North American, Inc. v. Ybarra (In re Ybarra), 424 F.3d 1018 (9th Cir. 2005).  The ultimate question is whether the discharged debtor has voluntarily "returned to the fray" in the renewed litigation.  Siegel v. Federal Home Loan Mortg. Corp., 143 F.3d 525, 533-34 (9th Cir. 1998).

In re Ybarra is the saga of a die-hard litigant who paid the ultimate price for her belief in her claims.  Ms. Ybarra sued her former employer, Rockwell International Corporation ("Rockwell"), originally in 1988. In her Fifth Amended Complaint, filed in April 1991, Ms. Ybarra asserted two causes of action against Rockwell: 1) employment discrimination in violation of California Government Code § 12940; and 2) violation of the covenant of good faith and fair dealing.  In re Ybarra, 424 F.3d at 1020.  On December 10, 1991, Ms. Ybarra filed a chapter 11 bankruptcy petition, but she did not disclose her claims against Rockwell in her schedules.  Id.  Rockwell first learned of Ms. Ybarra's bankruptcy case in 1993 and moved to convert the case to chapter 7.  Id.  Rockwell's motion was granted, and the case was converted in June 1993.  Id.

Rockwell negotiated a $17,500 settlement of Ms. Ybarra's claims with the chapter 7 trustee, to which Ms. Ybarra objected.  Id.  However, the bankruptcy court approved the settlement over Ms. Ybarra's objections on November 12, 1993.  Id.  Thereafter, the state court granted the trustee's and Rockwell's motion to dismiss Ms. Ybarra's lawsuit.  Id.

In the meantime, Ms. Ybarra had amended her schedule of exempt property to add her lawsuit against Rockwell.  Rockwell objected to her amended exemption claim, and the bankruptcy court sustained Rockwell's objection.  Id.  That decision was reversed by the Bankruptcy Appellate Panel, which was affirmed by the Ninth Circuit.  On remand, the

Page 14 - MEMORANDUM OPINION

bankruptcy court upheld Ms. Ybarra's exemption claim and gave her the option of accepting the $17,500 settlement amount from Rockwell or proceeding with her lawsuit against Rockwell in state court. _Id._ She chose to proceed with her lawsuit.

Thereafter, Ms. Ybarra persuaded the state court to set aside its dismissal order, and the case proceeded on Rockwell's motion for summary judgment. _Id._ Summary judgment ultimately was granted in Rockwell's favor. Rockwell then moved for an award of fees and costs under California law and was awarded $456,884.03 against Ms. Ybarra. _Id._ at 1020-21.

Ms. Ybarra previously had received her discharge in bankruptcy in May 1998. Rockwell filed a motion in the bankruptcy court for leave to enforce the state court's award of fees and costs. The bankruptcy court granted Rockwell's motion to the extent of $159,030.78, the total amount of fees and costs incurred by Rockwell after Ms. Ybarra filed her bankruptcy petition. _Id._ at 1021. Ms. Ybarra appealed to the Bankruptcy Appellate Panel, which reversed, "holding that the entire fee and cost award was discharged in [Ms.] Ybarra's bankruptcy." _Id._

On further appeal, the Ninth Circuit reversed the Bankruptcy Appellate Panel, citing _Siegel_, for its holding that "post-petition attorney fee awards are not discharged where post-petition, the debtor voluntarily 'pursue[d] a whole new course of litigation,' commenced litigation, or 'return[ed] to the fray' voluntarily." _Id._ at 1024 (quoting _Siegel_, 143 F.3d at 533-34).

> Whether attorney fees and costs incurred through the
> continued prosecution of litigation initiated pre-
> petition may be discharged depends on whether the

Page 15 - MEMORANDUM OPINION

1
2

> debtor has taken affirmative post-petition action to
> litigate a prepetition claim and has thereby risked
> the liability of these litigation expenses.

3 In re Ybarra, 424 F.3d at 1026.

4        Both Mr. Taggart and the Respondents have cited In re Ybarra to

5 me and to the Circuit Court as setting forth the relevant legal standard

6 to consider whether the Respondents violated the discharge injunction of

7 § 524(a)(2) in seeking a judgment against Mr. Taggart in the Circuit

8 Court Litigation, including an award of attorney's fees and costs.  Based

9 on the record before it, and specifically noting the application of In re

10 Ybarra, the Circuit Court determined that an award of post-petition

11 attorney's fees against Mr. Taggart was not barred by the discharge

12 injunction, citing primarily Mr. Taggart's never having abandoned his

13 counterclaim for attorney's fees in the Circuit Court Litigation.  See

14 Letter Opinion, Exhibit Q, at pp. 1-2.

15        Injunctions issuing from the core jurisdictional authority of

16 the bankruptcy court are not subject to collateral attack in other

17 courts.  Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074,

18 1082 (9th Cir. en Banc 2000) (citing Celotex Corp. v. Edwards, 514 U.S.

19 300, 313 (1995)).  The discharge injunction of § 524(a)(2) is such an

20 injunction.

21        However, the Ninth Circuit further has held that a state court

22 is not divested of jurisdiction "to determine the applicability of a

23 discharge order when discharge in bankruptcy is raised as a defense to a

24 state cause of action filed in a state court . . . ."  McGhan v. Rutz (In

25 re McGhan), 288 F.3d 1172, 1180 (9th Cir. 2022).  Accordingly, a state

26 court, such as the Circuit Court in this case, has concurrent

Page 16 - MEMORANDUM OPINION

jurisdiction with this court to interpret the bankruptcy court's discharge orders, but it has no authority to modify them. See In re McGhan, 288 F.3d at 1179-80.

In Gruntz, where the automatic stay injunction of § 362 was considered, the Ninth Circuit stated that, "even assuming that the states had concurrent jurisdiction, their judgment would have to defer to the plenary power vested in the federal courts over bankruptcy proceedings." In re Gruntz, 202 F.3d at 1083. The Ninth Circuit applied the same principle to alleged violations of the discharge injunction of § 524 in In re McGhan. Accordingly, neither issue preclusion nor the Supreme Court's Rooker-Feldman doctrine preclude my review of the Circuit Court's findings and conclusions with respect to the scope and application of the discharge injunction regarding the Respondents' pursuit of the Judgment and an award of attorney's fees and costs against Mr. Taggart in the continued Circuit Court Litigation. See In re McGhan. 288 F.3d at 1181; In re Gruntz, 202 F.3d at 1083-84. "In short, the state court has jurisdiction to construe the bankruptcy discharge correctly, but not incorrectly." Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth, LLP (In re Pavelich), 229 B.R. 777, 784 (9th Cir. BAP 1999). See Huse v. Huse-Sporsem, A.S. (In re Birting Fisheries, Inc.), 300 B.R. 489, 500 (9th Cir. BAP 2003).

What the foregoing authorities do not make clear is, in circumstances where the state court has applied the correct legal authority in interpreting this court's discharge order, what standard of review applies to the state court's fact findings. Ordinarily, the standard for review of a trial court's fact findings is "clear error."

Page 17 - MEMORANDUM OPINION

1    SEC v. Coldicutt, 258 F.3d 939, 941 (9th Cir. 2001); Clear Channel

2    Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 32 (9th Cir. BAP

3    2008).  There are important reasons behind that standard.

4            The rationale for deference to the original finder of
            fact is not limited to the superiority of the trial

5           judge's position to make determinations of credibility
            [although that superiority of position is important in

6           itself].  The trial judge's major role is the
            determination of fact, and with experience in

7           fulfilling that role comes expertise.  Duplication of
            the trial judge's efforts in the court of appeals

8           would very likely contribute only negligibly to the
            accuracy of fact determination at a huge cost in

9           diversion of judicial resources. . . . As the court
            has stated in a different context, the trial on the

10          merits should be "the 'main event' . . . rather than a
           'tryout on the road.'" Wainwright v. Sykes, 433 U.S.

11          72, 90 . . . (1977).  For these reasons, review of
           factual findings under the clearly-erroneous standard

12          – with its deference to the trier of fact – is the
           rule, not the exception.

13

14    Anderson v. City of Bessemer City, 470 U.S. 564, 574-75 (1985) (emphasis

15    in original).

16        "A finding is 'clearly erroneous' when although there is

17    evidence to support it, the reviewing court on the entire evidence is

18    left with the definite and firm conviction that a mistake has been

19    committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

20    "This standard plainly does not entitle a reviewing court to reverse the

21    finding of the trier of fact simply because it is convinced that it would

22    have decided the case differently."  Anderson v. City of Bessemer City,

23    470 U.S. at 573.

24        In this case, after citing In re Ybarra, the Circuit Court

25    found that it was appropriate to award postpetition attorney's fees

26    against Mr. Taggart as an offset to the purchase price for his member

Page 18 – MEMORANDUM OPINION

interest in SPBC because Mr. Taggart had never abandoned his own counterclaim for attorney's fees in the Circuit Court Litigation. <u>See</u> Letter Opinion, Exhibit Q, at pp. 1-2. At oral argument on the Petition, Mr. Brown reminded the Circuit Court that Mr. Taggart had moved for a protective order in the Circuit Court Litigation postdischarge; that he had filed a motion to dismiss postdischarge, without moving for dismissal of his counterclaim for attorney's fees; and that he had claimed the potential award of attorney's fees in the Circuit Court Litigation as an asset in his bankruptcy. <u>See</u> Exhibit R, at p. 3 (pp. 9-11 of the hearing transcript). In addition, the Circuit Court presided at the Trial and thus had the opportunity first-hand to consider whether Mr. Taggart's interests were represented at the Trial. I do not have a complete transcript of the Trial to review. <u>See</u> Exhibit 13.

In these circumstances, I cannot conclude that the Circuit Court clearly erred in determining that the Respondents did not violate Mr. Taggart's discharge injunction under § 524(a)(2) in seeking a judgment and an award of offsetting, postpetition attorney's fees in the Circuit Court Litigation.

If the standard of review is de novo, my task is more complicated, but I ultimately likewise conclude that it is not appropriate to disturb the Circuit Court's findings and conclusions and further determine that Mr. Taggart's Contempt Motion should be denied for the following reasons.

Deciding the Contempt Motion presents mixed questions of law and fact. Review of "mixed questions" of law and fact requires consideration of legal principles and the exercise of judgment about the

Page 19 - MEMORANDUM OPINION

values underlying those legal principles. Consequently, review is de novo. <u>Wolkowitz v. Beverly (In re Beverly)</u>, 374 B.R. 221, 230 (9th Cir. BAP 2007) (citing <u>Murray v. Bammer (In re Bammer)</u>, 131 F.3d 788, 791-92 (9th Cir. 1997). <u>In re Beverly</u> and <u>In re Bammer</u> involved determinations regarding, respectively, a debtor's entitlement to a general discharge and to the dischargeability of a particular debt. This case involves yet another determination to be made with respect to the bankruptcy discharge: the application of the injunction arising upon its entry. Accordingly, generally, a determination made pursuant to § 524(a)(2) also is a mixed question of law and fact subject to de novo review.

De novo review requires that I consider a matter anew, independent of any prior decision, as if it had not been heard before. <u>United States v. Silverman</u>, 861 F.2d 571, 576 (9th Cir. 1988); <u>B-Real, LLC v. Chaussee (In re Chaussee)</u>, 399 B.R. 225, 229 (9th Cir. BAP 2008).

Setting aside the Judgment and the Letter Opinion of the Circuit Court, the record reflects the following as to Mr. Taggart's participation in the Circuit Court Lawsuit postdischarge:

When Mr. Brown subpoenaed Mr. Taggart for a second deposition in the Circuit Court Lawsuit, Mr. Taggart had Mr. Berman file a motion for a protective order, requesting that the subpoena be quashed and further requesting attorney's fees. One day before the Trial, Mr. Berman filed a motion to dismiss Mr. Taggart from the Circuit Court Lawsuit in Mr. Taggart's behalf, without offering to dismiss Mr. Taggart's counterclaim for attorney's fees. That motion was argued on the first day of Trial, with Mr. Brown arguing that Mr. Taggart was a necessary party with regard to SPBC's expulsion claim. While recognizing that no

Page 20 - MEMORANDUM OPINION

money judgment would be entered against Mr. Taggart in light of his bankruptcy discharge, the Circuit Court denied the motion to dismiss, and the Trial proceeded. Mr. Berman renewed his motion to dismiss in behalf of Mr. Taggart orally at the end of the Trial. Mr. Taggart did not appear or testify at the Trial.

Following the Trial, Mr. Berman filed the Objection to Judgment as "attorney for BT of Sherwood LLC and John Berman," but Mr. Taggart testified that Mr. Berman prepared the Objection to Judgment, in part, for him. A substantial portion of the Objection to Judgment, raises and argues objections in behalf of Mr. Taggart. At the Judgment Hearing, Mr. Berman told the Circuit Court that Mr. Taggart consented to what Mr. Berman was arguing, and again, much of Mr. Berman's argument focused on Mr. Taggart's issues. Mr. Taggart also appeared at the Judgment Hearing and argued before the Circuit Court. After the Judgment was entered, Mr. Taggart appealed it. He testified that he was representing himself in the appeal, but Mr. Berman had helped him in preparing his Notice of Appeal.

At the Hearing, Mr. Taggart testified that the Circuit Court Lawsuit had precipitated his personal bankruptcy filing. He also testified that when he filed for bankruptcy protection, he wanted to be finished with SPBC, he wanted to be freed from his connections with Mr. Jehnke and Mr. Emmert, and he had no money to fund further participation in the Circuit Court Lawsuit. In his bankruptcy schedules, he did not schedule any interest in SPBC or BT, but he did include a potential attorney's fee award on his counterclaim in the Circuit Court Lawsuit as an asset.

Page 21 - MEMORANDUM OPINION

1     The foregoing presents a very mixed record.  Individually, I am

2 not sure that any of the actions of Mr. Taggart on his own or through Mr.

3 Berman as outlined above would establish that Mr. Taggart renewed active

4 participation in the Circuit Court Lawsuit postdischarge.  However,

5 collectively, particularly from the point where the Circuit Court

6 determined that Mr. Taggart's attempted transfer of his member interest

7 in SPBC was ineffective and that he could be expelled from SPBC, I find

8 on de novo review that Mr. Taggart reengaged in the Circuit Court

9 Lawsuit, effectively "reentering the fray" for <u>In re Ybarra</u> purposes.  As

10 noted above, the burden of proof to prevail on a motion for contempt is

11 clear and convincing evidence, and I further find that Mr. Taggart has

12 not met that burden.

13                               <u>Conclusion</u>

14     To recapitulate: 1) In light of the Circuit Court's application

15 of the correct legal standard, citing <u>In re Ybarra</u>, if I review the

16 Circuit Court's fact findings for clear error, I conclude that the

17 Circuit Court did not clearly err in determining that it was appropriate

18 to grant an offsetting award of postpetition attorney's fees against Mr.

19 Taggart in the Circuit Court Lawsuit.  2) If my review is de novo, I

20 find, based on the record before me, that at some point postdischarge,

21 Mr. Taggart reengaged in the Circuit Court Lawsuit, and he did not meet

22 his burden of proof to establish by clear and convincing evidence that

23 the Respondents willfully violated the discharge injunction provided for

24 in § 524(a)(2).

25     Based on the foregoing findings of fact and conclusions of law,

26 I will deny Mr. Taggart's Contempt Motion.  Mr. Smith or Mr. Streinz

Page 22 - MEMORANDUM OPINION

should prepare and submit an order denying the Contempt Motion within ten (10) days following the date of entry of this Memorandum Opinion.

###

cc:      Damon J. Petticord
           James Ray Streinz
           John Berman
           Tyler Smith

Page 23 - MEMORANDUM OPINION