Below is an Opinion of the Court.

_____
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) Bankruptcy Case |
| | ) No. 09-39216-rld7 |
| Bradley Weston Taggart, | ) |
| | ) MEMORANDUM OPINION |
| Debtor. | ) |

### Factual Summary[1]

Bradley Weston Taggart ("Mr. Taggart) filed a Chapter 7[2] petition on the eve of trial in litigation in Washington County, Oregon

---

[1] This factual summary is brief. A detailed recitation of the underlying facts can be found in (1) this court's Memorandum Opinion entered December 9, 2011 (#64 on the docket), (2) the Opinion and Order entered August 7, 2012 on Mr. Taggart's appeal to the United States District Court for the District of Oregon (#105 on the docket), and (3) a decision of the Oregon Court of Appeals with respect to an appeal of the supplemental judgment entered postpetition in the Litigation (see Sherwood Park Business Center, LLC v. Taggart, -- P.3d --, 2014 WL6693829 (Or. App.)(November 26, 2014)).

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Page 1 - MEMORANDUM OPINION

Circuit Court ("Litigation") through which Sherwood Park Business Center, LLC ("SPBC")[3] asserted claims against Mr. Taggart for breach of fiduciary duty, expulsion, breach of contract, attorneys fees and declaratory relief. The claims arose from (1) Mr. Taggart's conduct as the managing member of SPBC, in which he held a 25% member interest, and (2) the validity of Mr. Taggart's attempted transfer of that member interest. The filing of the petition stayed the Litigation.

Mr. Taggart's chapter 7 discharge was entered February 23, 2010. Thereafter, the other SPBC members, Terry W Emmert ("Mr. Emmert") and Keith Jehnke ("Mr. Jehnke"), represented by attorney Stuart M. Brown ("Mr. Brown")[4] (collectively, "Respondents"), resumed the Litigation for the purpose of expelling Mr. Taggart from the SPBC. Mr. Taggart moved both to quash his scheduled deposition and to dismiss the Litigation on the basis of the bankruptcy discharge. However, the state court

---

[3] In his Trial Brief on Remand, Mr. Taggart makes an assertion that directly calls into question whether I am disinterested in this matter: "The Operating Agreement was prepared by the Landye, Bennett firm. The form of the Operating Agreement may even have been crafted or used by this Court."
   Landye, Bennett is the law firm at which I was managing partner before my appointment to the bench on February 1, 1998. For the record, SPBC's operating agreement reflects that SPBC was organized October 12, 1999. See Exhibit 1, at p. 18. Whether the Landye, Bennett firm may have continued to use a form to which I may have contributed my work product as an attorney does not mean that I prepared the SPBC operating agreement. Regardless, I am not called upon to interpret the operating agreement in these proceedings. All I am asked to decide is to review the knowledge and actions of the Respondents after February 23, 2010.

[4] Mr. Brown is now deceased. Shelley A. Lorenzon, the executor of Mr. Brown's estate, is the successor party for Mr. Brown's position. For clarity I will continue to refer to the actions taken and positions asserted as those of Mr. Brown.

Page 2 - MEMORANDUM OPINION

determined that Mr. Taggart was an essential party to resolving the SPBC member expulsion claim and allowed the Litigation to proceed with the proviso that no money judgment would be entered against Mr. Taggart.

Ultimately, the state court entered its "General Judgment" in favor of SPBC which deemed Mr. Taggart's attempted transfer of his member interest null and void. As relevant to the matter before me, the General Judgment expelled Mr. Taggart as a member of SPBC effective January 1, 2008, based upon his wrongful conduct under the operating agreement. The General Judgment awarded Mr. Emmert and Mr. Jehnke the right to purchase Mr. Taggart's member interest on the following terms:

> The purchase price shall be the fair market value of [SPBC] as of the date of entry of judgment multiplied by Taggart's 25% membership interest, less any unpaid postpetition attorney fees, costs and prevailing party fees which might be assessed against Taggart pursuant to ORCP 68 and ORS Chapter 20 and necessary proceedings in bankruptcy court or this court.

Respondents then initiated proceedings in the Litigation to recover postpetition attorney fees against Mr. Taggart to be used as an offset against the purchase price of his member interest. An attorney fee award was sought both by SPBC based on litigating the expulsion claim and separately by Mr. Emmert and Mr. Jehnke based on litigating the transfer of Mr. Taggart's member interest. SPBC sought a fee award against Mr. Taggart personally. Mr. Emmert and Mr. Jehnke sought an award against the alleged purchaser of Mr. Taggart's member interest. Mr. Taggart again asserted that his bankruptcy discharge precluded the imposition of such fees against him. Citing the Ninth Circuit's decision in <u>Boeing North American, Inc. v. Ybarra (In re Ybarra)</u>, 424 F.3d 1018 (9th Cir. 2005), the state court determined that Mr. Taggart had

Page 3 - MEMORANDUM OPINION

voluntarily returned to the fray, with the result that bankruptcy discharge did not preclude an award of postpetition attorney fees against him in favor on SPBC. The state court then entered its "Supplemental Judgment," which awarded SPBC $45,404.30 in attorney fees and costs from Mr. Taggart. The state court determined that Mr. Emmert and Mr. Jehnke were not entitled to a fee award against the alleged purchaser of Mr. Taggart's member interest.

In response to entry of the Supplemental Judgment, Mr. Taggart filed in this court his Motion to Hold Stuart M. Brown, Terry W. Emmert and Keith Jehnke in Contempt for Violating Discharge Injunction Under 11 U.S.C. § 524 ("Contempt Motion").[5] I denied the Contempt Motion following an evidentiary hearing held November 14, 2011 ("2011 Hearing"), on the basis that the state court had correctly determined that Mr. Taggart had voluntarily returned to the fray such that <u>Ybarra</u> precluded a finding that the discharge injunction had been violated.

On Mr. Taggart's appeal, the United States District Court for the District of Oregon reversed based on its conclusion after de novo review that Mr. Taggart had not voluntarily returned to the fray postpetition within the meaning of <u>Ybarra</u>. The Respondents' appeal to the Ninth Circuit was dismissed as interlocutory. The Contempt Motion therefore is before me once again on remand.

Following further briefing and oral argument held November 7, 2014 ("2014 Hearing"), I took determination of the Contempt Motion under

---

[5] An alleged violation of the discharge injunction is pursued, as in this case, by a motion invoking the contempt remedies allowed for in § 105(a). <u>See</u> <u>Walls v. Wells Fargo Bank, N.A.</u>, 276 F.3d 502, 509-10 (9th Cir. 2002).

Page 4 - MEMORANDUM OPINION

advisement.[6]

In deciding this matter, I have considered carefully the testimony presented at the 2011 Hearing on the Contempt Motion, the exhibits admitted at the 2011 Hearing, the supplemental exhibits filed in advance of the 2014 Hearing, and the arguments presented, both in legal memoranda and orally. I further have taken judicial notice of the docket and documents filed in Mr. Taggart's chapter 7 case for the purpose of confirming and ascertaining facts not reasonably in dispute. Federal Rule of Evidence 201; In re Butts, 350 B.R. 12, 14 n.1 (Bankr. E.D. Pa 2006). In addition, I have reviewed relevant legal authorities both as cited to me by the parties and as located through my own research.

In light of that consideration and review, this Memorandum Opinion sets forth the court's findings of fact and conclusions of law under Civil Rule 52(a), applicable with respect to this contested matter under Rules 7052 and 9014.[7]

/ / /

/ / /

---

[6] The current proceedings have been limited to issues regarding liability only. If I decide the Contempt Motion in favor of Mr. Taggart, further proceedings will be scheduled with respect to Mr. Taggart's damages claims.

[7] This matter, like the underlying Litigation, has been contentious at every step of the way. Accordingly, I expect to be appealed no matter how I decide. As an aid to the parties in their further contests, I note that the standard for review of decisions on motions for contempt in the Ninth Circuit is abuse of discretion. "We review the decision to impose contempt for abuse of discretion, and underlying factual findings for clear error." Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1991 (9th Cir. 2003), citing FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999).

Page 5 - MEMORANDUM OPINION

## Jurisdiction

I have jurisdiction to decide the Contempt Motion under 28 U.S.C. §§ 1334, 157(b)(1) and 157(b)(2)(I) and (O).

## Discussion

As in my prior Memorandum Opinion, the ultimate question before me is whether, in seeking the Supplemental Judgment, the Respondents violated the discharge injunction provided for in § 524(a)(2).[8]

An alleged contemnor's violation of the discharge injunction must be "willful" in order to be subject to sanctions for violating the discharge injunction. Under Ninth Circuit law, I apply a two-part test to determine whether the alleged violation was willful. I must find first, that the alleged contemnor knew that the discharge injunction applied, and second, that the alleged contemnor intended the actions that violated the discharge injunction. See Zilog, Inc. v. Corning (In re Zilog, Inc.), 450 F.3d 996, 1007 (9th Cir. 2006); Hardy v. United States (In re Hardy), 97 F.3d 1384, 1390 (9th Cir. 1996). The burden of proof for the moving party is clear and convincing evidence. See In re Zilog, Inc., 450 F.3d at 1007; Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002) ("The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.").

/ / /

---

[8] Section 524(a)(2) provides that, "A discharge in a case under this title – (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ."

Page 6 - MEMORANDUM OPINION

1. <u>Did the Respondents Know the Discharge Injunction "Applied"?</u>

Respondents contend that the first part of the <u>Zilog</u> test requires that I find that they knew that Mr. Taggart's discharge "applied" to the proceedings which resulted in the Supplemental Judgment. They suggest the phrasing precludes a finding of willfulness because they held a good faith belief that the discharge injunction did not apply in the Supplemental Judgment proceedings. In effect, I am asked to decide whether a good faith belief that the discharge injunction does not apply to proceedings vitiates the Respondents' knowledge that the discharge injunction was in existence. I hold that it does not. My reasons follow.

In <u>Zilog</u>, the Ninth Circuit states:

> A party who knowingly violates the discharge injunction can be held in contempt under section 105(a) of the bankruptcy code. [<u>See</u> <u>In re Bennett</u>, 298 F.3d 1059, 1069 (9th Cir. 2002)] . . . In <u>Bennett</u>, . . . [w]e cited with approval the standard adopted by the Eleventh Circuit for violation of the discharge injunction: "[T]he movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actons which violated the injunction." <u>Bennett</u>, 298 F.3d at 1069 (citing <u>Hardy v. United States (In re Hardy)</u>, 97 F.3d 1384, 1390 (11th Cir. 1996)).

Since the Ninth Circuit expressly adopted the Eleventh Circuit's willfulness test as set forth in <u>Hardy</u>, I reviewed the language in <u>Hardy</u> as the source for the test. In <u>Hardy</u>, the Eleventh Circuit extended its previously established test for determining whether a violation of the automatic stay was willful.

> In [<u>Jove Engineering, Inc. v. Internal Revenue Service</u>, 92 F.3d 1539 (11th Cir. 1996)], this court adopted a two-pronged test to determine willfulness in violating the automatic stay provision of § 362. Under this test the court will find the defendant in contempt if it: "(1) knew that the automatic stay

Page 7 - MEMORANDUM OPINION

> was invoked and (2) intended the actions which violated the stay." Jove, 92 F.3d at 1555 [emphasis added]. This test is likewise applicable to determining willfulness for violations of the discharge injunction of § 524.

Hardy, 97 F.3d at 1390.

Whether the Respondents knew the discharge was "invoked" is a simple fact-based inquiry. It does not allow for the subjective belief, good faith or otherwise, regarding whether, as a legal matter, the discharge applied to the proceedings. This premise is reinforced in the case law. "In determining whether the contemnor violated the stay, the focus 'is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue.'" In re Dyer, 322 F.3d at 1191 (quoting Hardy, 97 F.3d at 1390).[9]

Hardy, as adopted by the Ninth Circuit, in effect imposes a strict liability standard as the first element of the willfulness test: "If the court on remand finds, as plaintiff claims, that IRS received notice of Mr. Hardy's discharge in bankruptcy, and was thus aware of the discharge injunction, Mr. Hardy will then have to prove only that the IRS intended the actions which violate the stay." Hardy, 97 F.3d at 1390.

---

[9] Because courts have equated the willfulness test for automatic stay violations with that for discharge injunction violations, case law discussing automatic stay violations is instructive. The Ninth Circuit BAP has held that in automatic stay violation cases a finding of willfulness merely requires that the creditor know of the automatic stay and that the actions that violate the stay be intentional. No specific intent is required; a good faith belief that the stay is not being violated "is not relevant to whether the act was 'willful' or whether compensation must be awarded." Morris v. Peralta (In re Peralta), 317 BR 381, 389 (9th Cir. BAP 2004).

Page 8 - MEMORANDUM OPINION

In Lone Star Security & Video, Inc. v. Gurrola (In re Gurrola), 328 B.R. 158, 175 (9th Cir. BAP 2005), the Panel highlighted the sanctity of the discharge injunction, stating that once entered, it was "good against the world." Respondents had a duty to obey the discharge injunction. Only lack of notice of the discharge may serve as a defense to contempt sanctions. Id.

To the extent Respondents suggest that the state court's ruling that Ybarra applied to render the Supplemental Judgment proceedings outside the scope of the discharge injunction insulates them from a willfulness finding, I disagree. As I stated in my prior Memorandum Opinion, the state court had "jurisdiction to construe the bankruptcy discharge correctly, but not incorrectly." Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth, LLP (In re Pavelich), 229 B.R. 777, 784 (9th Cir. BAP 1999). See Huse v. Huse-Sporsem, A.S. (In re Birting Fisheries, Inc.), 300 B.R. 489, 500 (9th Cir. BAP 2003). The District Court determined that the state court construed the scope of Mr. Taggart's discharge incorrectly. Neither is my prior determination that the state court correctly determined Ybarra's impact on the Supplemental Judgment proceedings helpful to Respondents where it was reversed on appeal.

At the November 2011 Hearing, Mr. Brown testified that after discussion with his co-counsel, he would seek attorney fees postpetition

> ... for fees from the date the notice of discharge was filed. I think that was February 23rd of . . . 2010.
> ... Technically we could have gone back to [the petition date] . . . but as a practical matter it didn't make any sense. You know, we're not going to get attorney fees from Mr. Taggart in any event except for the offset.

Page 9 - MEMORANDUM OPINION

Tr. Of November 2011 Hearing at 83:25-84:9 [Exhibit T]. Thus, it is not disputed that Respondents had actual knowledge that Mr. Taggart's bankruptcy discharge had been entered at the time they sought the Supplemental Judgment. As such, they are charged with knowledge of the discharge injunction.

Respondents point out that the Supplemental Judgment was awarded only in favor of SPBC. Mr. Brown asserted that because he did not represent SPBC, he could not be held accountable for the actions that resulted in a fee award in favor of SPBC.

However, the record reflects that it was Mr. Brown who prepared and submitted the Supplemental Judgment which resulted in the award of fees in favor of SPBC and against Mr. Taggart. See Exhibit 27. When questioned about how he came to submit the judgment on behalf of SPBC, Mr. Brown testified:

> [I]n filing the petition for the judgment, the motion to enter the judgment, and the petition for fees, we [Mr. Brown and SPBC's attorney of record] had a discussion, and the discussion was whether both attorneys needed to file their own or whether one could do it and the other one join. And we decided to go the latter way to save money.

October 12, 2001 Deposition of Mr. Brown at 16:22-17:3 [Exhibit S].

Mr. Emmert and Mr. Jehnke also assert that they cannot be held accountable personally for any action resulting in the Supplemental Judgment, either because the award was in favor of SPBC or because they relied on the advice of their counsel. Mr. Brown testified that he had advised Mr. Emmert and Mr. Jehnke that if a court determined that Mr. Taggart had not returned to the fray, the discharge injunction would preclude a recovery of attorneys fees. Id. at 18:3-19:1. Thus,

Page 10 - MEMORANDUM OPINION

Mr. Emmert and Mr. Jehnke were on notice that seeking fees from Mr. Taggart might implicate the discharge injunction.

I find that Mr. Taggart has established the first element of the willfulness test by clear and convincing evidence.

2. <u>Respondents Intended the Actions Which Violated the Injunction</u>.

By initiating and pursuing proceedings to obtain the Supplemental Judgment, the Respondents violated the discharge injunction. There is no dispute in the record that they intended those actions. As previously stated, Mr. Brown testified he prepared and submitted the Supplemental Judgment. Because Mr. Brown would not have proceeded without approval from his clients, and because the record does not reflect that Mr. Emmert and Mr. Jehnke have at any time asserted they did not instruct Mr. Brown to proceed to seek attorney fees against Mr. Taggart, they also intended the actions that led to the entry of the Supplemental Judgment. I therefore find that Mr. Taggart has established the second element of the willfulness test by clear and convincing evidence.

3. <u>Consequences From the Violation of the Discharge Injunction</u>.

Three consequences flow from the above findings.

First, the Supplemental Judgment is void, having been entered in violation of the discharge injunction. <u>See</u> § 524(a)(1).[10]

Second, having proven both elements of the willfulness test, Mr. Taggart is entitled to entry of an order holding the Respondents in contempt of for violating his discharge injunction.

---

[10] The Oregon Court of Appeals reversed the entry of the Supplemental Judgment on appeal.

Page 11 - MEMORANDUM OPINION

Third, Mr. Taggart is entitled to an evidentiary hearing to determine the appropriate amount of sanctions damages this court should impose against Respondents.

## Conclusion

Based on the foregoing findings of fact and conclusions of law, I will enter an order holding Respondents in contempt. Further proceedings are appropriate to determine the amount of sanctions damages warranted under the circumstances.

###

cc: John Berman
James Ray Streinz
Hollis K. McMilan