Below is an Opinion of the Court.

*[signature]*
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) Bankruptcy Case |
| | ) No. 09-39216-rld7 |
| BRADLEY WESTON TAGGART, | ) |
| | ) MEMORANDUM OPINION |
| Debtor. | ) |

Following the entry of the Memorandum Opinion (Docket No. 158) and the Order on Motion for Contempt (Docket No. 159) on Bradley Weston Taggart's ("Mr. Taggart") First Amended Motion for Contempt ("Contempt Motion") (Docket No. 42) against Stuart M. Brown ("Mr. Brown"), Terry W. Emmert ("Mr. Emmert"), Keith Jehnke ("Mr. Jehnke") and Sherwood Park Business Center, LLC ("SPBC") (collectively, "Respondents"), I held a hearing ("Hearing") on February 27, 2015 to hear evidence on Mr. Taggart's damages claims. At the Hearing, I admitted Mr. Taggart's Exhibits 28, 29 and 30, without objection; I heard the testimony of Mr. Taggart; and I heard argument and engaged in discussion with counsel. At the end of the Hearing, I closed the evidentiary record.

In addition, the declarations of Mr. Taggart's counsel, John M. Berman and Damon J. Petticord, with itemizations of time and expenses

Page 1 - MEMORANDUM OPINION

attached, were submitted to support Mr. Taggart's request for an award of attorneys' fees and costs. Since the declarations of counsel only recently had been submitted, I granted counsel for the Respondents until Friday, March 6, 2015, to file any objections to the requested fees and costs. Counsel for the estate ("Estate") of Mr. Brown, who is deceased, advised me by letter that the Estate would not be filing an objection to the fee request of Mr. Taggart's counsel. However, counsel for the other Respondents filed an objection ("Fee Objection") to the request for fees and costs of Mr. Taggart's counsel on March 6, 2015, and Mr. Taggart's counsel filed a response ("Response") to the Fee Objection on March 8, 2015. With these final submissions, I took the matter under advisement.

In considering appropriate damages determinations, I have considered carefully the evidence and arguments presented, focusing particularly on Mr. Taggart's testimony and the declarations of Mr. Berman and Mr. Petticord. In addition I have reviewed relevant legal authorities, both as cited to me by the parties and as discovered through my own research.

Based on that consideration and review, I have come to a decision on what awards of damages are appropriate in this matter. Following are my findings of fact and legal conclusions under Civil Rule 52(a), applicable with respect to this matter under Rules 7052 and 9014.[1]

---

[1] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532; all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037; and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

Page 2 - MEMORANDUM OPINION

<u>Damages for Civil Contempt</u>

Mr. Taggart requests awards of damages in three categories, each of which I address in turn, as follows:

A. <u>Actual Damages</u>

In the Contempt Motion, Mr. Taggart requested emotional distress damages of $50,000, resulting from stress and its physical manifestations. The Ninth Circuit has held, in the context of a claim for violation of the automatic stay under § 362(h) (now, § 362(k)), that in order for an individual to be entitled to damages for emotional distress, the individual must (1) suffer significant harm, (2) clearly establish the harm, and (3) demonstrate a causal connection between the harm and the claimed violation, distinct "from the anxiety and pressures inherent in the bankruptcy process." <u>Dawson v. Washington Mutual Bank, F.A. (In re Dawson)</u>, 390 F.3d 1139, 1149 (9th Cir. 2004). The Ninth Circuit concluded that if an individual established that he "suffered significant emotional harm and the circumstances surrounding the violation make it obvious that a reasonable person would suffer significant emotional harm," such proof would suffice "even in the absence of corroborating evidence." <u>Id.</u> at 1151. Judge Brown concluded that emotional distress damages appropriately could be awarded with respect to a contempt claim based on an alleged violation of the discharge injunction, subject to the standards set forth in <u>Dawson</u>. <u>In re Feldmeier</u>, 335 B.R. 807, 812-14 (Bankr. D. Or. 2005). <u>Accord</u> <u>In re Culpepper</u>, 481 B.R. 650, 660 (Bankr. D. Or. 2012).

At the Hearing, Mr. Taggart testified that he suffered chronically from a psoriasis condition. According to Wikipedia,

Page 3 - MEMORANDUM OPINION

"**Psoriasis** . . . is a common, chronic, relapsing/remitting, immune-mediated systemic disease characterized by skin lesions including red, scaly patches, papules, and plaques, which usually itch," which is essentially how Mr. Taggart described his condition. Mr. Taggart testified that his psoriasis, which came and went based on his stress levels, had come under control when he received his bankruptcy discharge, and his slate of debts had been wiped clean. However, from the time when the Respondents began their efforts to obtain a personal judgment against him in state court for attorneys' fees and obtained such judgment, Mr. Taggart's psoriasis had flared up, not only on his scalp (where he previously had experienced manifestations of the condition), but on other parts of his body as well. His symptoms included not only the typical lesions, but further included open wounds with bleeding. Mr. Taggart also began experiencing difficulties sleeping. He consulted a doctor on at least one occasion in April 2013, but he had no funds to pay for medical care, and the only specific cost for treatment that he could identify was $100 spent for a tube of medicating ointment. Mr. Taggart did not present any corroborating medical evidence or supporting testimony from family members, friends or co-workers as to his stress levels or medical condition.

  At the outset, I found Mr. Taggart's testimony as to the stress and physical consequences that resulted to him from the Respondents' post-discharge actions credible. Accordingly, I find that it is appropriate to award Mr. Taggart some damages for the emotional stress and psoriasis-related physical problems that he has experienced post-discharge. However, as readily admitted at the Hearing by Mr. Taggart's

Page 4 - MEMORANDUM OPINION

counsel, such damages are difficult to quantify because, frankly, there is no specific standard by which to measure such damages.

There is no question in my mind, after all of the proceedings to date related to the Contempt Motion, that Mr. Taggart's relationship with the Respondents has had a long and bitter history, and that historically poisoned relationship undoubtedly has had an impact on the stress that Mr. Taggart experienced in dealing with the Respondents and, unfortunately, will continue to have an impact with respect to the surviving Respondents after this proceeding is finally resolved. I also recognize that the entire process of going through bankruptcy is stressful. So, not all of Mr. Taggart's emotional and physical distress can be attributed to the post-discharge conduct of the Respondents.

That said, my ultimate finding and conclusion is that under the Dawson/Feldmeier standards, Mr. Taggart is entitled to an award of damages for substantial harm in terms of his emotional distress and its physical manifestations caused by the post-discharge conduct of the Respondents in violation of the discharge injunction in the amount of $5,000, awarded jointly and severally against the Respondents.

B. Attorneys' Fees and Costs

As the Ninth Circuit has stated, "We emphasize that attorneys' fees are an appropriate component of a civil contempt award." Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1195 (9th Cir. 2003), citing Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002). However, any award of attorneys' fees must be reasonable. See, e.g., In re Dawson, 390 F.3d at 1152; In re Dyer, 322 F.3d at 1195.

At the Hearing, counsel for the Estate and for Mr. Emmert, Mr.

Page 5 - MEMORANDUM OPINION

Jehnke and SPBC both conceded that the hourly rates charged by Mr. Taggart's counsel were reasonable, and no issue has been raised as to the reasonableness of Mr. Taggart's counsel's expense reimbursement requests. Accordingly, any disputes among the parties focus on the reasonableness of the time expended by Mr. Taggart's counsel, as reflected in the itemizations attached to the Declarations of Mr. Berman and Mr. Petticord.

I have reviewed both itemizations in light of the Fee Objection filed by counsel for Mr. Emmert, Mr. Jehnke and SPBC and the Response filed by Mr. Taggart's counsel. At the outset, I note that this matter has been protracted and professionally handled. My findings and conclusions as to each of the categories of objections to Mr. Taggart's attorneys' fees claim raised in the Fee Objection follow:

1. <u>Vagueness, Block Billing, Lumping</u>. While Mr. Berman sometimes includes several tasks in his individual time itemizations and describes tasks performed in general terms, I do not find that his time entries were too vague to allow for reasonableness review, and I find that his time entries appear reasonable for the work performed, even where tasks are grouped together within a single time entry. I do not find it appropriate to reduce his fees with respect to this objection.

2. <u>Administrative/Secretarial Functions</u>. Ordinarily, in a typical law firm setting, attorneys should not be billing their time for performing secretarial or administrative services. So, in typical circumstances, an objection on this basis would be well taken. However, as Mr. Berman points out in his Response, he is a solo practitioner, who does not employ a secretary or paralegal to assist him in performing his legal

Page 6 - MEMORANDUM OPINION

work. In reviewing his itemization, I do not find that the time expended on what might ordinarily be characterized as secretarial or administrative services unreasonable or excessive, particularly since any such time that I noted usually was combined with performing legal work. Again, I do not find it appropriate to reduce his fees on this basis.

3. <u>Billing in Quarter Hour Minimums</u>. As counsel for Mr. Emmert, Mr. Jehnke and SPBC notes, Mr. Berman bills in quarter hour minimum increments, but the total of quarter hour entries is only $1,575, and many of such entries that I reviewed reasonably would have required at least one quarter hour or more to perform the services described. I find no basis to reduce Mr. Berman's allowed fees on this ground.

4. <u>Representation of Mr. Taggart in the State Court Litigation</u>. Mr. Berman includes in his itemization, 2.25 hours with respect to representing Mr. Taggart in the state court litigation. In light of the District Court's determination that Mr. Taggart did not reengage in the state court litigation, I find that the objection on this point is well taken and will reduce the fee award by 2.25 hours ($787.50).

5. <u>Duplicative Time</u>. Counsel for Mr. Emmert, Mr. Jehnke and SPBC objects to Mr. Petticord's time entries as vague and duplicative of services performed by Mr. Berman. I note that it is not unreasonable for a solo practitioner to seek counsel and assistance in developing legal strategies and performing legal work, particularly with respect to a matter that presented the complications of this one. Mr. Petticord's conferences with Mr. Berman and substantive legal work total only 6.0 hours, and I do not find that time unreasonable. However, Mr. Petticord also bills 10.25 hours for attending the depositions of Mr. Brown, Mr.

Emmert and Mr. Jehnke, and for attending two hearings, without any detail as to services he was performing through just "being there." It is reasonable to assume that Mr. Petticord was helping Mr. Berman through his attendance by observing what went on outside the storm center of acting, but gauging the reasonableness of such passive attendance is difficult. Ultimately, I conclude that it is appropriate to deduct half the time Mr. Petticord spent merely attending depositions and court hearings or 5.125 hours ($1,025).

6. <u>Miscellaneous Substantive Time</u>. Counsel for Mr. Emmert, Mr. Jehnke and SPBC also objects to the 2.0 hours that Mr. Berman itemizes for preparation for examination/cross-examination of Mr. Emmert and Mr. Jehnke for the Hearing when neither Mr. Taggart nor any of the Respondents designated either Mr. Emmert or Mr. Jehnke as a witness for the Hearing. Excerpts from the deposition testimony of both Mr. Emmert and Mr. Jehnke were admitted as exhibits (Exhibits 29 and 30) without objection at the Hearing. Under the circumstances, I find that the subject time was not necessarily spent for Hearing preparation, and I will sustain the objection. In addition, in light of what was required after remand from the District Court in this matter and what was discussed at the scheduling conference with the court on September 16, 2014, I do not find that the 5.0 hours Mr. Berman spent on the Motion to Clarify and supporting memorandum and the related hearing, itemized for 9/23/2014, 9/24/2014 and 10/1/2014, was either necessary or reasonable. Accordingly, I will deduct those 5.0 hours as well. On the other hand, I appreciate that Mr. Berman did not bill any time for preparation of his thorough Response to the Fee Objection in order to avoid another

Page 8 - MEMORANDUM OPINION

potential round of objections and responses to the additional fees requested, but I expect that he put in reasonable time to prepare the Response of at least 3.0 hours, and I will allow that additional time at his $350 hourly rate. Accordingly, I will deduct a net 4.0 hours ($1,400) for this miscellaneous substantive time category.

7. <u>Ninth Circuit Appeal</u>. Since Mr. Brown was not employed by the other Respondents to pursue the Ninth Circuit appeal after the District Court ruling and did not participate in the Ninth Circuit appeal, I conclude that it would not be appropriate to award fees in relation to the Ninth Circuit appeal (38.5 Hours = $13,475) against the Estate that I will award against the other Respondents.

8. <u>Totals of Attorneys' Fees and Costs Awarded</u>. Based on the foregoing findings and conclusions, I will award attorneys' fees of $101,450 and costs of $4,143.71, a total of $105,593.71, jointly and severally against Mr. Emmert, Mr. Jehnke and SPBC, and I will award attorneys' fees and costs totaling $92,118.71 against the Estate, payable jointly and severally as part of the total attorneys' fees and costs award against the Respondents.

C. <u>Punitive Damages</u>. As I stated at the Hearing, under current Ninth Circuit authority, I can award mildly coercive punitive damages in the context of a contempt proceeding for violation of the discharge injunction under § 105(a). <u>See, e.g.</u>, <u>Espinosa v. United Student Aid Funds</u>, 553 F.3d 1193, 1205 n.7 (9th Cir. 2008) ("If the bankruptcy court finds that the creditor here willfully violated the injunction, it shall, at the very least, impose sanctions to the extent necessary to make [debtor] whole. <u>See</u> 2 Collier Bankruptcy Manual (3d rev. ed.) ¶

Page 9 - MEMORANDUM OPINION

524.02[2][c] ('In cases in which the discharge injunction was violated willfully, courts have awarded debtors actual damages, punitive damages and attorney's fees.')."); In re Dyer, 322 F.3d at 1193 ("Although 'relatively mild' non-compensatory fines may be necessary under some circumstances, Zambrano v. Tustin, 885 F.2d 1473, 1479 (9th Cir. 1989); [F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.], 244 F.3d at 1140 n.10, the language of § 105(a) simply does not allow for the serious punitive penalties here assessed (a minimum of $50,000 and, under the trustee's theory, over $200,000).").

In the Contempt Motion, Mr. Taggart requested punitive damages of $100,000. In his Hearing memorandum, Mr. Taggart reduced that request to $20,000.

I note first that since Mr. Brown is deceased, coercive sanctions serve no purpose with respect to the Estate, and accordingly, I decline to award punitive damages against the Estate. As to Mr. Emmert, Mr. Jehnke and SPBC, if all we were concerned with here was their actions while Mr. Brown represented them, I find that they acted consistent with the advice of their counsel, and punitive damages might not be appropriate. However, after the District Court decision and subsequent rulings of this court and the Oregon state courts that the supplemental state court judgment for attorneys' fees against Mr. Taggart was improper, it ultimately required an order of this court, entered on March 4, 2015 (Docket No. 179), to get the supplemental attorneys' fees judgment vacated. In these circumstances, I find an award of $2,000 punitive damages (40% of the actual damages award) against Mr. Emmert, Mr. Jehnke and SPBC is appropriate as a sanction to insure that Mr.

Page 10 - MEMORANDUM OPINION

Taggart's discharge order is observed in future.

## Conclusion

Based on the foregoing findings and conclusions, I award Mr. Taggart actual damages of $5,000, jointly and severally against the Respondents; attorneys' fees and costs of $105,593.71, awarded jointly and severally against Mr. Emmert, Mr. Jehnke and SPBC, of which $92,118.71 further is awarded jointly and severally against the Estate; and punitive damages of $2,000, awarded jointly and severally against Mr. Emmert, Mr. Jehnke and SPBC. No punitive damages are awarded against the Estate. Mr. Berman should prepare and submit an order and judgment consistent with this Memorandum Opinion, approved as to form by counsel for the Respondents, within ten days following entry of this Memorandum Opinion.